## GEORGE F. PHILLIPS ET AL. v. H. M. GASTRELL.

SWAMP LANDS. *Limit of purchase. Two hundred and forty acres, three-eighths of section.*

Section 3 of an act of the legislature, approved February 1, 1877, authorizing the swamp land commissioner to sell the swamp lands belonging to the State upon certain prescribed terms, contains the proviso, "that no person shall be allowed to enter more than two hundred and forty acres under the provisions of this act." The words "two hundred and forty acres," as used in this proviso, must be construed as convertible with "three-eighths or six-sixteenths of a section," and any sale under this act which does not exceed such subdivision is good whether the land therein embraced be more or less than two hundred and forty acres.

APPEAL from the Circuit Court of Wilkinson County.

HON. J. B. CHRISMAN, Judge.

This is an action of replevin for two lots of trees which the agent and employees of the defendant had cut and were removing. At the trial the plaintiffs proposed to prove that the trees had been cut from lands belonging to them, and they first put in evidence a copy of a patent from the United States to the State of Mississippi, dated April 1, 1858, and embracing lands described as follows : Lots 4, 7, 8, 9, 10, 11, and 12, section 20, town. 3 N. R. 4 W.; S. E. ¼, section 24, town. 3 N. R. 4 W.; sections 27, 28, 38, and 39, town. 3 N. R. 4 W., and sections 39 and 40, town. 4 N. R. 3 W. They then offered in evidence patents from the State to individuals, as follows : To Preston Thomas, for lots 11, 12, 13, and 14, section 38, and lot 2, section 39, town. 3 N. R. 4 W., containing two hundred and thirty and fifty one-hundredth acres ; to R. R. Brown, for lots 11 and 12, section 20, and S. E. ¼, section 24, town. 3 N. R. 4 W., containing two hundred and forty-seven and thirty-one hundredth acres ; to State Hill, for N. ½, N. E. ¼, section 21, and lots 1, 2, and 3, section 27, town. 3 N. R. 4 W., containing two hundred and twenty-six and twelve one-hundredth acres; to James Adams, for S. E. ¼ of N. E. ¼, and S. E. ¼ and N. E. ¼ of S. W. ¼, section 28, town. 3 N. R. 4 W., containing two hundred and forty-seven and eighty-seven one-hundredth acres ; and to Richard Potter, for E. ½ of S. E. ¼, sec-

tion 39, and N. W. ¼, section 40, town. 4 N. R. 3 W., containing two hundred and forty and forty-seven one-hundredth acres. And the plaintiffs also offered in evidence deeds to themselves from the patentees above named, conveying all the lands embraced in their patents. The patents from the State were dated the 18th of November, 1881, and the deeds from the patentees to the plaintiffs were dated the 25th of November, 1881. Upon the motion of the defendant, the court excluded from the evidence the patents to R. R. Brown, James Adams, and Richard Potter and the deeds from them to the plaintiffs, on the ground that the same "contain more than two hundred and forty acres of land and are therefore void."

The verdict and judgment were in favor of the defendant, and the plaintiffs appealed to this court.

*Nugent & McWillie,* for the appellants.

The lands conveyed lie in a low, swampy country and along the *Homochitto* River. Their lines cross streams not meandered, and within the acreage is computed more or less of running water or lakes, and doubtless this may account for the excess over the quantity of land in a section usually required by law. And besides this, the interpretation apparently put upon the statute by the officers was that it limited the right of the applicant to three-eighths of a section of land. Indeed, the patents actually issued to the parties in this case illustrate that view. The one issued to Preston Thomas conveys two hundred and thirty and fifty one-hundredth acres, nearly ten less than the quantity allowed by law, and that to State Hill nearly fourteen acres less. Now, whether this view be correct or not, it satisfies the proposition that the patents are only *voidable* and not void. The sales in question have been reported *to the legislature* and the purchase-money has been paid into the treasury and used. All the lands sold have been patented, and there is no objection to the proceeding by any department of the State government. It seems but right that the appellee, himself a trespasser, should not be allowed to interfere.

*C. P. Neilson,* for the appellee.

There was no error in excluding the patents and deeds offered by the plaintiffs below to show title to the lands. The lands on

which the trees are alleged to have been cut were " swamp lands."
Appellants claim title by purchase from the State under chapter 14,
Acts of 1877. Section 3 provides that the commissioner "is autho-
rized to sell and dispose of said swamp lands remaining unsold, for
cash and at a price not less than twenty-five cents per acre, provided
that no person shall be allowed to enter (purchase?) more than two
hundred and forty acres under the provisions of this act" (Acts of
1877, p. 34). That this pretended purchase by appellants was
fraudulent and in evasion and violation of the law, and, as a con-
sequence, absolutely void, we submit clearly appears from the face
of the records. This is the transaction disclosed by the patents
and deeds.

COOPER, J., delivered the opinion of the court.

The court erred in excluding as evidence the patents issued to
the vendors of the plaintiffs for the lands from which the timber
sued for was taken.

We know as a matter of public history that these lands have
been surveyed by the United States, and that these surveys are of
sections and their subdivisions, or lots conforming as nearly as
practicable in quantity to the subdivisions. It is by these sub-
divisions of sections that the lands are dealt with by the State; and
it has, we believe, been uniformly held that where the right is
given to buy surveyed lands, and the language of the law is that
not more than forty or eighty or six hundred and forty acres may
be purchased by one person, such words are to be construed as
meaning the surveyed divisions containing such quantities of land,
and as authorizing the purchase of any such recognized division or
subdivision, although, as a matter of fact, some of them may con-
tain a greater quantity than that designated by the literal language
of the law. We know that usually a surveyed section of land
contains six hundred and forty acres, but we know also that some
of them contain more and some less than this. In *Fulton* v.
*McAfee*, 5 How. 751, two sections had been entered by the appli-
cant which contained an aggregate of thirteen hundred and fifty
acres. It was held that the " actual survey controls the number of

acres in all public surveys and grants," and it was said that under the preemption laws of 1839, which authorized the entry by one person " of one-quarter section, or one hundred and sixty acres," it had " been uniformly held to justify the entry of a quarter section, or fractional division of a section, containing more than that number of acres."

The first act of Congress for the disposal of the lands of the United States south of Tennessee provided that " not more than one tract shall be granted to any one person, and the same shall not exceed six hundred and forty acres."    Act of 1803, § 2 (Code of 1857, p. 648).

The universal understanding of such laws by the public, and their construction by all the departments of the government, has been that the quantity named had reference to the sections as surveyed, though in fact some contained more and others less than the true section.

We have found no case in which a literal construction has been placed upon words of quantity in such statutes, where the number of acres designated by the law corresponded to the number of acres of a legal subdivision of land or a multiple thereof.    Aside from the uniform construction that has been put upon such language as that contained in the act of 1877, it is evident that inextricable confusion would arise in the land offices of the State if the insignificant excess should be reserved by the State in the sale of the subdivisions which exceed the usual area.    We are, therefore, of opinion that the words " two hundred and forty acres " in the act must be read as convertible with " three-eighths or six-sixteenths of a section."

*The judgment is reversed.*